The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger, the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. Employment records marked as exhibit 1 were received into evidence.
3. A one page medical record from Roche Biomedical Laboratories marked as exhibit 2 shall be received into evidence.
4. Dr. Maynor's medical records marked as exhibit 3 were received into evidence.
5. Dr. Goetzel's medical records marked as exhibit 4 were received into evidence.
6. Occupational therapy records marked as exhibit 5 were received into evidence.
7. Dr. Aitken's medical records marked as exhibit 6 were received into evidence.
8. Subsequent to the hearing, a letter dated 26 May 1998 from Dr. Aitken was marked as exhibit 7 and received into evidence.
9. Subsequent to the hearing, a vocational assessment from Preston Rehabilitation Consulting was marked as exhibit 8 and received into evidence.
10. Subsequent to the hearing, a vocational assessment from Southern Rehabilitation Network, Inc., was marked as exhibit 9 and received into evidence.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. From 14 March 1994 to 18 May 1995, plaintiff was employed by the defendants as an assembly technician. In her job as an assembly technician, the plaintiff was required to participate in all of the production positions at the Mebane, N.C. plant and the Roxboro, N.C. plant, assembling drive shafts for automobiles. There were fifteen assembly stations at the defendant-employer's place of employment requiring assembly of long drive shafts with the plaintiff's hands. There were thirteen assembly stations for the production of short drive shafts. Plaintiff's job duties with the defendant-employer required significant grasp and pinch force with her hands to assemble components. Several of her work stations required her to push, pull, and lift about thirty pounds constantly.
2. On 23 June 1995, the parties entered into a Form 21 Agreement whereby the defendants agreed to pay temporary total disability compensation for "bilateral wrist pain/numbness from rotation at assembly through various work stations." Dr. Aitken determined that this bilateral wrist pain and numbness was symptomatic as a result of the plaintiff having sustained bilateral carpal tunnel syndrome.
3. Plaintiff underwent a right carpal tunnel release under the direction of Dr. Aitken on 5 July 1995.
4. Plaintiff underwent a left carpal tunnel release under the direction of Dr. Aitken on 15 August 1995.
5. Plaintiff's performance of her job duties as an assembly technician significantly contributed to plaintiff's development of her left lateral epicondylitis.
6. Plaintiff's performance of her job duties as an assembly technician as well as her physique placed plaintiff at an increased risk in contracting left lateral epicondylitis as compared to the public not so equally exposed.
7. Plaintiff's performance of her job duties as an assembly technician and the physical therapy she received following her wrist surgery significantly contributed to plaintiff's development of bilateral trigger thumbs.
8. Plaintiff's performance of her job duties as an assembly technician her physique, and the physical therapy she received following her wrist surgery placed plaintiff at an increased risk in contracting bilateral trigger thumbs as compared to the public not so equally exposed.
9. Plaintiff has not reached maximum medical treatment with regard to her work-related left lateral epicondylitis and her work-related bilateral trigger thumb conditions. The healing period for plaintiff's left lateral epicondyle injury and bilateral trigger thumb injuries has not ended.
10. As of 28 August 1997, Dr. Aitken was of the opinion that surgeries on both of plaintiff's thumbs and her left lateral epicondyle were reasonably necessary to relieve plaintiff's symptoms of pain. At the 18 November 1997 deposition, Dr. Aitken opined that these surgeries would still benefit the plaintiff if she was continuing to experience symptoms of discomfort.
11. On 28 September 1995, Dr. Aitken released the plaintiff to attempt to return to work with the restriction that plaintiff might have to wear a protective glove on her left hand. Plaintiff had not reached maximum medical improvement nor had she reached the end of the healing period with regard to her compensable bilateral carpal tunnel wrist injuries. Plaintiff did not attempt to return to her regular job as an assembly technician which had remained available to her. Instead, plaintiff took a medical leave of absence in order to take care of her mother who was dying at that time. On 5 December 1995, the defendant-employer terminated the plaintiff because plaintiff continued to remain out of work in order to take care of her mother.
12. At the time that Dr. Aitken released plaintiff to return to work on 28 September 1995, the defendant-employer's offer that plaintiff return to her assembly technician position was not an offer of suitable employment. Plaintiff was medically unable to return to her full time job as an assembly technician with the defendant-employer.
13. A 25 March 1998 functional capacity evaluation revealed that plaintiff was restricted to lifting, carrying and pushing up to twenty pounds occasionally. Plaintiff can pull up to fifty pounds. Plaintiff is restricted to reaching at or above her shoulder no more than three minutes at a time. Plaintiff is restricted from handling and fingering beyond 1/3 of the work day. Plaintiff can only perform these maneuvers if she is provided regular stretch breaks and a rotation of her job tasks.
14. From 5 December 1995 to the date of the hearing on 18 October 1997, plaintiff did not attempt to locate employment. After the hearing plaintiff hired a vocational specialist to determine whether there were any suitable jobs in the competitive marketplace. Vocational specialist Brian Preston determined that there were suitable jobs available to the plaintiff in the competitive marketplace. The defendants also hired vocational specialist Ron Alford after the hearing in order to determine whether there were suitable jobs available to the plaintiff in the competitive marketplace as well. Mr. Alford determined that during the week of 20 April 1998 through 24 April 1998, there were sufficient jobs within the local labor market within the "light" category suitable to the plaintiff when taking into account plaintiff's work experiences, life experiences and educational background. Sedentary positions in Durham, North Carolina such as the receptionist for the Bragg Town Veterinarian Hospital and the receptionist at the Ric Flair Golds Gym in Durham were suitable jobs in the competitive marketplace within a thirty mile radius from Person County where the plaintiff resides.
15. There is a lack of credible convincing evidence to support a finding that there were any suitable jobs available to the plaintiff during the time period beginning 29 September 1995 to 20 April 1998.
16. While there were suitable jobs in the competitive marketplace after 20 April 1998, there is insufficient evidence of record to support a finding that plaintiff would have obtained any of these jobs if she had made a diligent effort to obtain them.
17. Vocational rehabilitation is reasonably necessary to lessen plaintiff's disability.
***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained multiple occupational diseases in that her job duties as a assembly technician with the defendant-employer caused her to sustain bilateral carpal tunnel syndrome, bilateral trigger thumbs and left lateral epicondylitis. N.C. Gen. Stat. § 97-53(13)
2. Defendants have unsuccessfully rebutted the presumption of disability enjoyed by the plaintiff as a result of the approved Form 21 agreement for the time period beginning 28 September 1995 to present and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to temporary total disability compensation in the amount of $236.01 per week for the time period beginning 29 September 1995 to present and continuing. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have the defendants pay for all medical treatment that was reasonably necessary to effect a cure, provide relief and/or lessen plaintiff's disability as a result of her compensable bilateral carpal tunnel syndrome, bilateral trigger thumbs and left lateral epicondylitis. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation in the amount of $236.01 per week for the time period beginning 29 September 1995 to the present and continuing until further order of the Industrial Commission. The portion of this amount has accrued and shall be paid in a lump sum to the plaintiff subject to the attorney's fee approved below.
2. Plaintiff's claim for permanent partial disability compensation is HEREBY RESERVED.
3. Defendants shall pay for a medical examination to be performed by Dr. Aitken to determine whether plaintiff should still undergo surgery for her bilateral trigger thumbs and left lateral epicondylitis. Defendants shall pay for medical treatment recommended by Dr. Aitken including but not limited to any surgeries that he recommends following this examination.
4. Defendants shall provide vocational rehabilitation to the plaintiff. Plaintiff shall cooperate with the vocational rehabilitation efforts provided by the defendants.
5. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter every fourth check shall be sent directly to counsel for the plaintiff.
6. Defendants shall pay the costs.
This 5th day of April 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ DIANNE C. SELLERS COMMISSIONER